UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | |
|---|---|
| UNITED STATES OF AMERICA,    ) | |
| ) | Criminal Action No. 2: 11-069-DCR |
| Plaintiff,    ) | and |
| ) | Civil Action No. 2: 15-7397-DCR |
| V.    ) | |
| ) | |
| VINCENT NUNLEY,    ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendant.    ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Vincent Nunley pled guilty to conspiring to distribute more than five kilograms of cocaine in violation of 21 U.S.C. § 846. [Record Nos. 226, 317, 318] He was sentenced to a term of imprisonment of 252 months, followed by a ten-year term of supervised release. [Record No. 319] The United States Court of Appeals for the Sixth Circuit affirmed Nunley's sentence. [Record No. 358] The Judgment included a monetary forfeiture which is the subject of Nunley's current challenge to his sentence under 28 U.S.C. § 2255. [Record Nos. 319, p. 6; 388]

Consistent with local practice, Nunley's motion was referred to a United States Magistrate Judge for review pursuant to 28 U.S.C. § 636(b)(1)(B). United States Magistrate Judge Robert E. Wier has recommended that Nunley's motion for habeas relief under 28 U.S.C. § 2255 be denied and that no Certificate of Appealability be issued. [Record No. 409] Nunley filed timely objections. [Record No. 412] After conducting a *de novo* review of the portions of the report to which Nunley objects, the Court will adopt the Magistrate Judge's Recommended Disposition and deny Nunley's motion.

**I.**

In seeking relief under 28 U.S.C. § 2255, a defendant may assert that: the sentence was imposed in violation of the United States Constitution or federal law; the court lacked jurisdiction; his or her sentence exceeded the maximum penalty authorized by law; or the sentence is otherwise subject to collateral attack. To prevail on a claim of constitutional error, a defendant must establish an error of constitutional magnitude which had a substantial and injurious effect or impact on the proceedings. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citations omitted). Conversely, to prevail on a claim of non-constitutional error, the defendant must show a "'fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process.'" *Id*. (quoting *United States v. Ferguson*, 918 F. 3d 627, 630 (6th Cir. 1990)).

A district court must make a *de novo* determination of those portions of a magistrate judge's recommendation to which an objection is made. 28 U.S.C. § 636(b)(1)(C). However, "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

**II.**

Nunley makes eight related arguments for relief centered on the forfeiture of a particular parcel of real property located at 1600 Pelham Place. He contends that: (i) the government breached terms of the parties' Plea Agreement by forfeiting 1600 Pelham Place and a related ineffective assistance of counsel ("IAC") claim; (ii) the government breached the Plea Agreement by stating that any forfeiture of 1600 Pelham Place would occur in a separate proceeding and a related IAC claim; (iii) the government failed to follow 21 U.S.C.

§ 853(p) and Fed. R. Crim. P. 32.2 and a related IAC claim; (iv) his attorneys were ineffective because they did not argue that the government breached the Plea Agreement to the district court or on appeal; (v) § 853 does not authorize joint and several liability between co-defendants and a related IAC claim; (vi) "proceeds" were improperly defined under § 853 and a related IAC claim; (vii) counsel erred by stating that his property was subject to direct forfeiture; and (viii) his guilty plea was not knowing and voluntary. These arguments will be addressed in the order that the Magistrate Judge considered them in his report.

     A.     **Nunley's Guilty Plea Was Knowing and Voluntary. (Argument No. 8)**

Nunley argues that his guilty plea was not knowing and voluntary because it was induced by false promises based on the government's statement at the change of plea hearing that "it's not [Nunley's] responsibility to raise a million dollars – we have to try and find that money to satisfy [the money judgment]." [Record No. 331, p. 15] Nunley argues that the forfeiture of 1600 Pelham Place and the Bureau of Prisons' ("BOP") requirement that he pay the monetary judgment as part of the inmate financial responsibility program breach this "promise." [*See* Record No. 388-1, p. 13.] However, the record directly refutes Nunley's allegations that he was promised that these avenues would not be available for satisfying the money judgment. In advancing this claim, Nunley takes one isolated statement out of context and ignores the remaining discussion on the forfeiture issue.[1]

The statement that, "it's not [Nunley's] responsibility to raise a million dollars – we have to try and find that money to satisfy [the money judgment,]" was made by the

---

[1] Nunley did not rely on this statement by the government. After this statement was made by counsel for the United States, the Court asked if the government's statements answered Nunley's questions, to which he responded, "[n]o, because what I heard was losing my house and I worked hard for that." [Record No. 331, p. 15] The parties and the Court further discussed forfeiture and the monetary judgment before Nunley agreed to proceed with his guilty plea.

prosecuting attorney in an effort to explain the monetary portion of the judgment. [Record No. 331, p. 15] Counsel explained that, "the money judgment is not going to be a condition of supervised release . . . . Nunley's not going to face revocation of supervised release at some future date just because the money judgment may be outstanding at some point in time." [Record No. 331, p. 15] When considered in context of the discussion at the change of plea hearing, it becomes clear that this statement was not a broken or false promise. Instead, the government has acted consistently with this and other related statements.

Nunley argues in his objections that his plea was "knowing and voluntary up front" but that it was induced on false promises that the property would not be forfeited directly in the criminal proceeding and he would not need to come up with a million dollars. [Record No. 412, p. 4] But again, Nunley's assertions are directly contradicted by the record. The transcript establishes that the Assistant United States Attorney ("AUSA"), Nunley's counsel, and the undersigned clarified Nunley's questions about forfeiture at the time of his guilty plea. As the Magistrate Judge concluded, "the prosecutor, at most, meant that Nunley would not be revoked and imprisoned for failing to satisfy the money judgment, not that the United States could not seek money judgment satisfaction through any available means." [Record No. 409, p. 5] In fact, immediately after the AUSA's statement, the Court explained that "the United States, if it's not able to satisfy the amount of the forfeiture, may seek to forfeit any other assets, real property or personal property that the defendant owns or has an interest in . . . it is a very likely possibility that if you do have a house . . . and you're not able to satisfy the money judgment, the United States may seek forfeiture of that property." [Record No. 331, p. 16] Following this explanation and further, consistent statements by his counsel,

Nunley acknowledged that he wished to proceed with his guilty plea. [Record No. 331, p. 17]

Further, Nunley admitted that the written Plea Agreement was the only agreement he had with the government. [Record Nos. 331, pp. 18, 25; 317, ¶ 11] In the Plea Agreement, Nunley acknowledged that the understood it terms, it was explained to him, and he was entering into it voluntarily. [Record No. 317, ¶ 13] As the Magistrate Judge explained, the terms of Nunley's Plea Agreement and Nunley's sworn statements made during the change of plea hearing, establish that the guilty plea was knowing and voluntary. [See also Record No. 331, p. 36.] Nunley stated at the sentencing hearing that he felt that he had been "duped" into signing the Plea Agreement. [Record No. 330, p. 11] In response, the Court noted that,

> [w]hile the defendant, again, blames others, claims that he was duped into signing the plea agreement, this Court has already determined that his entry into the plea agreement was voluntary, it was also knowing, and based upon the facts that establish this defendant was engaged in drug trafficking activities as alleged in the superseding indictment in the case.

[Record No. 330, pp. 20–21]

While the Sixth Circuit did not directly address Nunley's current arguments, it found "[a]s for Nunley's claim that the court should have imposed a more lenient sentence because the Government 'duped him,' the court did not abuse its discretion by rejecting this on the facts or by considering the argument as evidence of Nunley's failure to accept responsibility." *United States v. Nunley*, 559 F. App'x 470, 475 (6th Cir. 2014).

### B. The Government Did Not Breach the Plea Agreement. (Arguments 1 and 2)

Nunley's arguments that the government breached his Plea Agreement "by forfeiting property it agreed not to forfeit" and that counsel was ineffective by not raising the argument earlier or on appeal also fail on their merits. "The Government's failure to adhere to its plea

agreement in good faith has been held to implicate a defendant's due process rights." *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000). "Plea agreements are contractual in nature, so we use traditional contract law principles in interpreting and enforcing them." *United States v. Bowman*, 634 F.3d 357, 360 (6th Cir. 2011). However, due to "plea agreements' constitutional and supervisory implications," courts "hold the government to a greater degree of responsibility than the defendant" and any ambiguities are construed against the government. *Id.* (quoting *United States v. Johnson*, 979 F.2d 396, 399 (6th Cir. 1992)). In construing written plea agreements, the court must look to "'what the defendant reasonably understood' when he entered into the agreement" to determine whether a plea agreement has been broken. *United States v. Fields*, 763 F.3d 443, 453 (6th Cir. 2014) (quoting *United States v. Herrera*, 928 F.2d 769, 771 (6th Cir. 1991)).

"The 'most persuasive evidence' of what a defendant 'reasonably appreciated as his bargain is found in the plain language of the court-approved agreement.'" *Fields*, 763 F.3d at 453 (quoting *United States v. Phibbs*, 999 F.2d 1053, 1081 (6th Cir. 1993)). Nunley's Plea Agreement provides:

> The Defendant will forfeit to the United States all interest in the property listed in the forfeiture allegation of the Superseding Indictment and will execute any documents necessary for this forfeiture. The only exception to this forfeiture is that the United States is amending its request for a money judgment to the amount of $1,230,000 and withdrawing its request to forfeit real estate located at 1600 Pelham Place, Cincinnati, Ohio 45237. **The Defendant understands that the United States reserves the right to attempt to enforce the money judgment against all assets, including this real estate.**

[Record No. 317, ¶ 8 (emphasis added)]

Nunley states that he refused to plead guilty if the property was included as part of the direct forfeiture; however, he acknowledged in the Plea Agreement that the property was still

-6-

subject to forfeiture to satisfy the monetary judgment against him. By the terms of the Plea Agreement and in-court discussions about its terms, Nunley agreed and understood that the real property located at 1600 Pelham Place was subject to forfeiture. *Nunley*, 559 F. App'x at 471 ("[T]he plea agreement made clear that Nunley 'underst[ood] that the United States reserve[d] the right to attempt to enforce the money judgment against all assets, including this real estate.' The understanding that the real estate was not separately forfeited but could be used toward the money judgment was reiterated during plea proceedings."). Further, and as explained in more detail by the Magistrate Judge, the fate of the Pelham property was addressed numerous times during the extended change of plea colloquy and during the sentencing hearing. [*See* Record Nos. 409, pp. 10–12; 331, pp. 13–17; 330, pp. 7–8, 13.]

Nunley points to a statement referencing a "separate proceeding" and focuses on this isolated comment in support of his contention that he understood there would be a separate action if the property was going to be forfeited. [*See* Record No. 388-1, pp. 4–5, 388, p. 5.] But the record does not support this argument. First, Nunley confirmed that the Plea Agreement was the *only* agreement he had with the government. [Record No. 331, p. 18] Next, he admitted that there were no additional agreements or "outside statements" or threats that caused him to sign the Plea Agreement. [Record Nos. 317; 331, pp. 18, 25] Additionally, and as more fully outlined by the Magistrate Judge, the AUSA's statement that there would be a "separate proceeding" is, at most, ambiguous and certainly does not rise to the level of a promise or an amendment to the Plea Agreement.[2] [Record No. 409, p. 14]

---

[2] The AUSA stated:

> That's exactly right. There's a piece of real estate that was indicted. We agreed we're going to drop a specific claim for that real estate. However, as the Court

Counsel's statement may have referred to a lien attached to the property, it may have referred to Nunley's ability to contest the forfeiture, or it could have related to the ancillary hearing required if a third party asserts an interest in the property. [*Id.*]; *see* Fed. R. Crim. P. 32.2. Notwithstanding this ambiguity, the record forecloses Nunley's assertions that: (i) "the [p]rosecutor state[d] that any forfeiture would be in a separate proceeding in open court on the record;" (ii) the plea agreement "drop[ped] the forfeiture;" (iii) the AUSA gave his "word in open court on the record that if the property was ever subject to forfeiture that would be a separate proceeding where Nunley could contest the forfeiture under applicable rules;" and (iv) "should the [g]overnment ever try to go after . . . 1600 Pelham Place that would occur in a . . . separate civil forfeiture action where he could be present and have a change to argue against the legality of the property forfeiture." [Record No. 412, p. 9] Based on the record, Nunley could not have "reasonably understood" that any of these promises were made by the government in the Plea Agreement or otherwise.

### C. 21 U.S.C. § 853(p) and Fed. R. Crim. P. 32.2

#### 1. These Claims are Procedurally Defaulted.

Nunley argues that the government did not comply with 21 U.S.C. § 853(p) and Fed. R. Crim. P. 32.2 in the forfeiture process and that he cannot be held jointly and severally liable with a co-defendant for the monetary judgment. The Magistrate Judge correctly concluded that Nunley waived his ability to make these arguments through a collateral attack. [Record No. 409, pp. 7–8] Further, these claims should have been brought on direct

---

has already indicated, in an effort to enforce the money judgment, what we'll do is find assets, and there might be a lien attached to this. If there is, Mr. Nunley can deal with that. That's a separate proceeding, and we can deal with that then.

[Record No. 331, p. 13] It is not clear to what "[t]hat" refers.

appeal. Because they were not brought at that time, they are procedurally defaulted. *See Regaldo v. United States*, 334 F.3d 520, 528 (6th Cir. 2003). To bring the claim at this time, Nunley must show either "that (1) he had good cause for his failure to raise such arguments and he would suffer prejudice if unable to proceed, or (2) he is actually innocent." *Id.* Nunley has not met his burden with respect to either element.

Nunley argues in his objections that any procedural default was caused by his counsel's failure to raise the issue. However, good cause for his failure to raise these arguments on appeal must be attributed to "some objective factor external to the defense" rather than an error by counsel. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). It may be "satisfied by a showing that the factual or legal basis for a claim was not reasonably available to counsel." *Ambrose v. Booker*, 684 F. 3d 638, 645 (6th Cir. 2012) (quoting *Murray*, 477 U.S. at 488). "Ineffective assistance of counsel constitutes 'cause' to excuse a default only if it is 'so ineffective as to violate the Federal Constitution,' *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000)—i.e., it meets *Strickland's* ineffective standard." *Jones v. Bell*, 801 F.3d 556, 562 (6th Cir. 2015) (citing *Byrd v. Collins*, 209 F.3d 486, 519 (6th Cir. 2000)). As discussed below, this claim fails on its merits and counsel cannot be ineffective for failing to raise a meritless claim. *See Conley v. Warden Chillicothe Corr. Inst.*, 505 F. App'x 501, 507 (6th Cir. 2012); *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999) ("[T]here can be no constitutional deficiency in appellate counsel's failure to raise meritless issues.").

As fully explained by the Magistrate Judge, Nunley could have brought both of these claims as part of his direct appeal. The preliminary judgment was final as to Nunley at the time of the sentencing hearing. *See* Fed. R. Crim. P. 32.2. Where the court later amends a forfeiture order to include additional property, the defendant may file an appeal once the

amendment becomes final. *See* Fed. R. Crim. P. 32.2(b)(4)(C). But Nunley did not object to the order of forfeiture when filed, at the sentencing hearing, or later on appeal. Similarly, at least by the time the judgment was entered, Nunley was aware that the Court imposed joint and several liability for the monetary judgment against him and a co-defendant. [Record No. 319, p. 6] However, he did not raise this argument on appeal. While these arguments were procedurally defaulted, they also fail on their merits.

### 2. The Government Complied With 21 U.S.C. § 853(p) and Fed. R. Crim. P. 32.2. (Argument 3)

Nunley is subject to a money judgment in the amount of $1,230,000.00, representing the gross proceeds derived from drug trafficking activities. [*See* Record No. 319, p. 6] Nunley and his co-defendant James Holt are jointly and severally liable for this amount. [*Id.*] Because funds to satisfy the judgment were not otherwise available, the government identified a substitute asset—1600 Pelham Place—to be sold and applied to the judgment amount. [Record Nos. 302, 304, 334, 336] Nunley argues that the government failed to comply with 21 U.S.C. § 853(p) and Fed. R. Crim. P. 32.2 during the forfeiture process. In his objections, he argues generally that the forfeiture did not complye with these provisions but he fails to articulate any particular deficiency by the government or violation of his due process rights as a result. As more fully described by the Magistrate Judge, forfeiture complied with § 853(p) and Rule 32.2 and Nunley's arguments to the contrary are without merit.

"A forfeiture action can take the form of a money judgment, forfeiture of specific assets, or forfeiture of substitute assets." *United States v. Abdelsalam*, 311 F. App'x 832, 847 (6th Cir. 2009) (citing *United States v. Candelaria-Silva*, 166 F.3d 19, 42 (1st Cir.

1999)). Here, Nunley agreed[3] that the amount of the money judgment, which meets the requirements of § 853(a), was not available and, therefore, could not "be located upon the exercise of due diligence" as specified by § 853(p)(1)(A). Under such circumstances, "the court shall order the forfeiture of any other property of the defendant . . ." 21 U.S.C. § 853(p)(2). Substitute assets need not be tied to the criminal activity to be subject to forfeiture. *See United States v. Erpenbeck*, 682 F.3d 472, 477 (6th Cir 2012) ("[S]ubstitute property [is] untainted property that the government may seize to satisfy a forfeiture judgment if the tainted property is unavailable."). Thus, the Pelham Place property was correctly forfeited as substitute property under the relevant statute.

Rule 32.2(e) sets out the procedure for forfeiture of substitute property. "On the government's motion, the court may at any time enter an order of forfeiture or amend an existing order of forfeiture to include property that . . . is substitute property that qualifies for forfeiture under an applicable statute." Fed. R. Crim. P. 32.2(e)(1)(B). The applicable statute authorizing the real property's substitution is § 853(p).

The use of 1600 Pelham Place as a substitute asset was specifically contemplated by the parties at Nunley's change of plea and sentencing hearings. *Nunley*, 559 F. App'x at 471 ("The understanding that the real estate was not separately forfeited but could be used toward the money judgment was reiterated during plea proceedings."). The government attempted to notify all third parties that may have had an interest in the property but these endeavors

---

[3] Nunley admitted that he "do[es not] have a million dollars" and reiterated that fact in his objections. [Record Nos. 331, p. 14; 412, p. 11] Additionally, Dalemonta Nunley took title to 1600 Pelham Place "after it was named in the indictment." *Nunley*, 559 F. App'x at 471. The government sought, without success, to notify third parties Dalemonta Nunley and D'Zired Properties, LLC of the forfeiture action. [*See* Record No. 336]

were unsuccessful.  The Court agrees with the Magistrate Judge that the government's actions and relevant orders comply with § 853 and Rule 32.2 in all material respects.

### 3. Joint and Several Liability for Nunley and His Co-Defendant Was Proper Under § 853.  (Argument 5)

The Magistrate Judge correctly concluded that Nunley and his co-defendant are jointly and severally liable for the gross proceeds of the drug trafficking conspiracy.  Nunley argues that the Court of Appeals for the District of Columbia's decision in *United States v. Cano-Flores*, 796 F.3d 83 (D.C. Cir. Aug. 7, 2015) (holding that a $15 billion forfeiture assessment against Cano-Flores erroneously included amounts not obtained by Cano-Flores), requires a different result.  *Id.* at 91 ("[Section] 853(a)(1) . . . does not authorize imposition of a forfeiture based on the total revenues of a conspiracy simply because they may have been reasonably foreseeable . . . . We . . . read[] the statutory language as providing for forfeiture only of amounts 'obtained' by the defendant on whom the forfeiture is imposed.").

The Sixth Circuit has affirmed a district court's application of joint and several liability among coconspirators for the proceeds of a drug conspiracy, while noting that other circuits have concluded that § 853 "mandates joint and several liability among coconspirators for the proceeds of a drug conspiracy." *United States v. Logan*, 542 F. App'x 484, 489–90 (6th Cir. 2013) (collecting cases); *see also United States v. Evans*, 0:13-CR-22-DLB-EBA, Docket Entry 253 (E.D. Ky. Jan. 12, 2015).  In *Logan*, the Sixth Circuit found that the district court did not err by "limit[ing] the amount of proceeds attributable to a defendant to those reasonably foreseeable to that defendant." *Id.* at 499.  Other circuits have applied the "reasonably foreseeable" standard. *Id.*  The Court agrees with the conclusion that joint and several liability is required under § 853 and rejects the reasoning outlined in *Cano-Flores*.

*See United States. v. Roberts*, 660 F.3d 149, 165 (2d Cir. 2011) ("[T]his mandatory liability is joint and several among all conspirators."); *United States v. Van Nguyen*, 602 F.3d 886, 904 (8th Cir. 2010); *United States v. White*, 116 F.3d 948, 951 (1st 1997); *United States v. Jarrett*, 133 F.3d 519, 531 (7th Cir. 1998); *United States v. McHan*, 101 F.3d 1027, 1043 (4th Cir. 1996); *United States v. Pitt*, 193 F.3d 751, 765 (3d Cir. 1999). Further, *Cano-Flores* is distinguishable on its facts. Accordingly, Nunley is properly subject to joint and several liability under 21 U.S.C. § 853.

### D. Ineffective Assistance of Counsel Claims

Nunley makes a number of arguments attacking his counsel's representation in relation to the substantive issues outlined above. However, these IAC arguments also fail. Ineffective assistance of counsel is a mixed question of law and fact that is reviewed under the test outlined in *Strickland v. Washington*, 466 U.S. 668 (1984). It requires a defendant to show: (i) counsel's performance was deficient by "[falling] below an objective standard of reasonableness," *id.* at 687–88; and (ii) that the defendant was "prejudiced" by such deficient performance. *Id.* at 691–92.

To determine deficiency, the court must "conduct an objective review of [counsel's] performance, measured for 'reasonableness under prevailing professional norms,' which includes a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time.'" *Wiggins v. Smith*, 539 U.S. 510, 523 (2003) (quoting *Strickland*, 466 U.S. at 688–89); *Poindexter v. Mitchell*, 454 F.3d 564, 577 (6th Cir. 2006). This review requires consideration of the norms of practice as reflected in the American Bar Association Guidelines. *See Rompilla v. Beard*, 545 U.S. 374, 387 (2005).

To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. This threshold showing is less than a preponderance of the evidence. *Id.* The Sixth Circuit has held "that a petitioner need not prove by a preponderance of the evidence that the result would have been different, but merely that there is a reasonable probability that the result would have been different." *Skaggs v. Parker*, 235 F.3d 261, 271 (6th Cir. 2000).

1. **Counsel Was Not Ineffective for Failing to Argue Breach of the Plea Agreement. (Argument 4)**

As explained above and by the Magistrate Judge, the United States did not breach the Plea Agreement. And a defendant's attorney cannot be unconstitutionally ineffective for failing to raise meritless objections. *Mapes*, 171 F.3d at 413; *Walls v. Romanowski*, No. 2:06-CV-14203, 2013 WL 210735, at *7 (E.D. Mich. Jan. 18, 2013) ("Counsel is not required to raise meritless objections, and appellate counsel is not required to raise meritless claims."). In fact, counsel did the most he could do under the circumstances by successfully negotiating that the property would not be directly forfeited and reducing the amount of the monetary judgment. [*See* Record No. 331, p. 12.] Therefore, any argument regarding ineffectiveness on this point would have been futile.

2. **Counsel Was Not Ineffective for Failing to Argue a Proceeds vs. Profits Distinction. (Argument 6)**

Nun*ley* argues that his attorney was ineffective for failing to argue that "proceeds" means "profits" under § 853, *United States v. Santos*, 553 U.S. 507 (2008), and the rule of lenity. But *Santos* only addresses the meaning of "proceeds" in the federal money-

laundering statute, 18 U.S.C. § 1956(a)(1). Its holding does not apply in interpreting § 853. *See United States v. Heilman*, 377 F. App'x 157, 210–12 (3rd Cir. 2010).

Nunley also criticizes the Magistrate Judge's reliance on *Heilman*, 377 F. App'x at 210–12, because it is not binding on this Court. However, the Sixth Circuit has approved the definition of "proceeds" used in *Heilman* and in similar cases. *United States v. Logan*, 542 F. App'x 484, 498 (6th Cir. 2013) (citing *United States v. Olguin*, 643 F.3d 384, 400 (5th Cir. 2011); *United States v. Bucci*, 582 F.3d 108, 123 (1st Cir. 2009)). Thus, the Sixth Circuit agrees that the term "proceeds" as used in 21 U.S.C. § 853(a)(1) refers to gross proceeds, rather than net profits. *Id.* at 498.

For similar reasons, as explained in *Heilman* and summarized by the Magistrate Judge, the rule of lenity does not apply to § 853. The rule essentially provides that, "[w]hen ambiguity clouds the meaning of a criminal statute, 'the tie must go to the defendant.'" *United States v. Ford*, 560 F.3d 420, 425 (6th Cir. 2009) (quoting *Santos*, 553 U.S. at 513). However, § 853 is not a substantive criminal statute that renders conduct illegal, but a criminal forfeiture provision. *See Heilman*, 377 F. App'x at 211.

This argument fails on their merits and, consequently, counsel did not err by not raising this groundless claim. *See Mapes*, 171 F.3d at 427.

### 3. Counsel Was Not Ineffective by Stating That 1600 Pelham Place Was Subject to Direct Forfeiture. (Argument 7)

Nunley argues that his attorney was ineffective by informing him that 1600 Pelham Place was subject to direct forfeiture under § 853. In his objections, Nunley argues that his property was not subject to direct forfeiture and that it would not have been subject to forfeiture "until counsel stipulated to a money judgment." [Record No. 412, p. 20] He

contends that his counsel was ineffective for agreeing to the monetary judgment rather than letting the government pursue direct forfeiture. In his objections, Nunley argues that the reduction of the monetary forfeiture "means nothing" and that the property did not have any connection to his "illicit doings".

Nunley's concerns about forfeiture of the Pelham property, the explanations offered by the government, his attorney, and the Court are well-documented throughout the record and summarized by the Magistrate Judge. [*See* Record No. 409, pp. 26–28] Nunley's attorney successfully convinced the government to reduce the monetary judgment and avoided direct forfeiture of the Pelham property. [Record No. 331, pp. 12–13] Nunley expressed reluctance about the forfeiture of the property several times, whether through direct forfeiture or substitution. Yet, after extensive explanation, Nunley confirmed his agreement with the terms of the written Plea Agreement throughout the change of plea and sentencing process.

To the extent that Nunley's attorney advised him at some point in the process that the Pelham property would be subject to direct forfeiture, he has failed to demonstrate that this statement rises to the level of ineffective assistance of counsel. The property was not directly forfeited. Further, Nunley does not contest the facts underlying the amount of the judgment. Thus, as further described by the Magistrate Judge, Nunley has neither demonstrated that his counsel was deficient nor that he was prejudiced by his actions.

### III.

Nunley requested an evidentiary hearing to address what he "reasonably understood" during the change of plea hearing. *See United States v. Fields*, 763 F.3d 443, 453 (6th Cir. 2014). However, an evidentiary hearing is not necessary if "the files and records of the case

conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Where, as here, the defendant's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact," a hearing is not required. *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999).

Nunley's claims simply do not warrant a hearing. The record needs no further development and, as described above, it conclusively demonstrates that each claim fails on the merits.

## IV.

A Certificate of Appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); 28 U.S.C. § 2253(c)(2). When the denial of a motion filed under § 2255 is based on the merits, the defendant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Nunley has not made a substantial showing that he was denied his constitutional rights. Reasonable jurists would not debate the denial of Nunley's § 2255 petition or concluded that the issues presented are adequate to deserve encouragement to proceed further. *Id.* Therefore, a Certificate of Appealability will not issue.

## V.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. The Report and Recommendation of Magistrate Judge Robert E. Wier [Record No. 409] is **ADOPTED** in full and **INCORPORATED** by reference.

2. Defendant Vincent Nunley's objections [Record No. 412] to the Report and Recommendation are **OVERRULED**.

3. Defendant Vincent Nunley's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Record No. 388] is **DENIED**.

4. A Certificate of Appealability shall not issue with respect to any matter or claim raised in this proceeding.

5. A judgment in favor of the United States shall issue this date.

This 8th day of January, 2016.

Signed By:
*Danny C. Reeves*   DCR
United States District Judge